Good afternoon, Council. Again, I want to thank District Court Judge Don Malloy, who is here with us, helping us out, from the District of Montana. Thank you very much. And the first five cases have been submitted on the briefs, so we will take up Jihan, v. AMCO Insurance Company. Mr. Victor? Good afternoon, Your Honors. Brandon Vector for the appellants. May it please the Court, my clients were vastly underpaid by their insurer, AMCO. So, fire and vandals and losses at a car wash, oil change in Humboldt, California. I believe the material facts and arguments show that AMCO breached the policy and acted in bad faith, not paying their claims. For context, Humboldt, California is the outer edge of San Diego. A few miles down the road, you're into that country and close to the border. Suad Yacoub is the person who owns Jihan, Inc., Suad, Inc., Diana, Inc., Insurance, on the insurance policy. She owns and operates a gas station, and adjacent to that is a car wash and oil change facility. That's the matter that's in dispute. I'm distinguishing between car wash business and the car wash facility. AMCO will say this case is easy. There's a business and purchase agreement, and she sold everything but the building. I'm arguing that it's not quite that easy. If you scratch a little deeper, she continued to own the leasehold improvements and other facility improvements that AMCO failed to pay her for. I want to understand your argument. I'm looking at the sales agreement, and it seems to support on its face the insurance company's position. Your position is that although the agreement seems to say that, it's not what the parties meant? My contention is threefold. One, AMCO didn't pay enough of what they agreed my clients owned, meaning the roof, the walls, the door. We submitted evidence that there's at least $83,000 in loss they didn't pay for. My next argument is that she continued to own the building electrical, which I think it's hard for anyone to dispute that the building electrical that was damaged in the fire should have been paid for. The third point to get to your honest question is, yes, there are other matters beyond building electrical and the things that AMCO acknowledged that were damaged, such as the car wash controller, which is bolted to the wall, which I'm saying we're arguing is a leasehold improvement that she continued to own. The two parties to the sale, the seller and the buyer, both testified. I understand that. We know the record. I'm asking you on that third item, if you will, on the third point, the agreement on its face seems to suggest that certain items would not be insurable because they were no longer covered by the policy. But you're saying that's wrong because even though the agreement says that the car wash equipment and systems had been sold to the buyer, your clients really intended to retain ownership of them and the buyer also intended that too. On that third point, that's your argument?  I understand what your argument is. I want to get back to the electrical. I'm not sure I understand from this record what the dispute about electrical is about. Is it about the electrical wiring in the building or is it about the electrical systems that were used to run the car wash? I believe it's both, your honor. How can I tell that from the summary judgment record? When I went to look at the summary judgment record, I'm not sure I could find a sort of distinct claim for the building wiring. Did I just miss that? Well, I believe it was the undisputed fact number 172 where we said fire damaged the car wash control room including the ceiling, framing, roof covering, building, electrical, car wash equipment. If you'll indulge me, I'll read a little bit from the transcripts of the argument that we had before. No, I'm not so much worried about the argument. I'm trying to figure out the record. The record says building electrical. I know that's there, I just don't know what it means. Whether it means the control panel and the electrical apparatus used to run the car wash or whether it means the wires in the walls or something like that. Is there some way I can tell from the record? Your honor, we submitted photographs and my understanding is the building electrical, the actual wires, you wouldn't be able to turn on the lights in that control room without it. Well, I understand your understanding of it and I might have a different one. I've looked at the photographs. I'm just trying to figure out where a claim was made for, let me call it wiring inside the walls or inside the ceilings or something. I see lots of damage to the control panel and the external stuff. I'm just not sure I can find a claim for that. Maybe I'm wrong. Well, the claim was based on the damages that we submitted from melodic construction. Right, and I'm looking right now at ER 191. Right. And it says connect all car wash and oil change equipment require damaged electrical and there's a number there. But it doesn't tell me whether that's the electrical systems for the car wash or the electricity for the building, I guess is another way to put it. And I understand your contention that it's the latter. I'm just trying to find out where in the record I can find some evidence of that. And maybe you can respond to that. I was going to direct you to that page where it says damaged electrical. And then the other page that I would direct you to, your honor, would be their denial. Well, along what they said was the only damage we think there is is to the car wash system and the electrical panels and stuff used to run that. And they claim that wasn't covered by the policy for the reasons, you know, covered by the third point that you were talking about. So it may be that I'm missing something here, and maybe your friend can help me out on it. But I'm just I'm trying to figure out what building electrical means in addition to the electrical equipment used to run the car wash. If I could direct you to 2ER170. So there's a highlighted portion that talks about the fire is thought to be electrical in nature, damage to the ceiling, framing, roof covering, and building electrical. And then if you go to the next, to the last paragraph on that page, it talks about the payments that AMCO has made. And that's $15,203.70 for cover damage caused by the fire. Based on fire scope and estimate, this includes the cleaning of the concrete walls and floors, replacement of the doors to the room, repairs to the ceiling, roof framing, and repairs to the roof, roofing and stucco. Obviously, absent from what they're paying for is the building electrical that they identified right above that. Thank you. And so that's what we're going to figure out. We're saying our claim included the $50,000 that, about $50,000 that Vladeck Construction estimated would pay for repairing the damaged electrical. That's kind of my second point. The first point was that my client submitted a claim for $713,000 and was paid $9,000 plus $6,000 of one month's rent. The adjuster for AMCO acknowledged receiving the estimates and speaking to the vendors. That's on page 2 ER 50. But then when push came to shove, they never paid anything more on those estimates. They didn't go to appraisal, they didn't provide another contractor that would rebuild what they agreed was damaged, the roof, the ceiling, in violation of the California regulations. And why is that important? Because wrongful failure to pay a covered claim is a breach of contract. Reasonably failing, unreasonable conduct is bad faith. Argument is that by not adjusting or going to appraisal or paying further on a claim, they breached the policy. Was that a part of the original claim? It was, Your Honor. It was argued, we argued the regs to Judge Robinson on summary judgment. Probably not the most artfully argued point, but I believe that you don't have to be perfect on summary judgment, you just have to create a material fact, and I believe we did. Is there a California case suggesting that breach of the reg gives rise to a private cause of action? Your Honor, there is a case, and I believe we cited it in the opening brief. Yeah, I know what you cited. I'm trying to find, I understand how the insurance department could crack down on the insurer for not following the regs. I guess my question is, can you sue somebody for not following the regs, or is your suit limited to not paying under the contract? My suit is suing what's unreasonable, and one of the factors I believe we can show that's unreasonable is not following the regs. So it's not a stand-alone cause of action, it's just what you think is evidence supports your argument of unreasonableness? Correct, Your Honor. My final point is they didn't pay for floors and doors. This goes to the oil change. So now we're outside the car wash, we're talking about the floors and doors, which are about $38,000 that AMCO adjusted itself. They had one adjuster, Ms. Johnson Gray, went out there, looked at the property, saw that there were damages to the floors and doors, adjusted it for $38,000, and then they sent it to a new adjuster, Mr. Bowles, who came back and said, Your Honor, one, you don't own it, you just sold it, and two, it was all negligently maintained and a dishonest and criminal act. That's dishonesty. And my point there is that I believe there's a negligence exception to the dishonesty exclusion, and that the Judge Hoff, in the case that we cited, she kind of looked at Gutted, it's the Turner Greenberg case. She thought that, and this is under her, I recognize that, but she thought that Gutted, the property, was not excluded by the dishonesty exclusion audit space. And the adjuster, in the record, acknowledges that the flooring was torn up and what the subtenant did was not professionally done. The point is that there's, it's AMCO's burden to show the exclusion applies, it's a small risk policy, and they didn't do enough. And I believe we created a disputed fact on that issue. Thank you, Your Honor. All right. Well, Counsel, you're out of time, so thank you very much. And let's see, we'll, I can't read this handwriting, the substitute attorney, so just please introduce yourself. Yes. Good afternoon, Your Honors. My name is Matt Feiner on behalf of Amgard Insurance Company. And hopefully that's not my handwriting, because if it were, I'm sure you could not read it. Your Honors, I'd like to start by addressing the question the court asked about the electrical. There is no evidence in the record as to whether it's building electrical or electrical that relates to the car wash. The only pieces of evidence that relate to that are those that were reviewed earlier by the court. And I think the reason why there is no evidence regarding the electrical is because there hasn't been a dispute raised until actually the reply brief and this oral argument where the building electrical was put at issue. The district court expressly noted that the amount that was paid already by AMCA was not in dispute. This whole lawsuit arises out of the alleged failure to pay for the car wash improvements and equipment. It has nothing to do with the amount that was paid and hasn't been challenged to date. That's why our motion for summary judgment. Counsel, can I interrupt you if you don't mind? In the agreement between the parties, didn't the seller maintain an interest in leaseholds in that property? The second sentence of the agreement does say that the seller is maintaining leasehold improvements. And is the building electrical a leasehold improvement? I guess that would depend on whether or not the building electrical relates to the electrical equipment that powers the car wash. Because if it does, then it would not be a leasehold improvement. It would be part of the car wash equipment and systems. If it was a leasehold improvement, is it covered by the policy? Well, you would have to look to determine whether or not the electrical was an operational condition and would be excluded by something such as the negligent maintenance exclusion. We have evidence to say that the equipment that was run there, the car wash equipment, was negligently maintained. But isn't your answer to Judge Molloy's question, I take it, is that put aside whether they made a claim for building electrical for a moment. If they made one, the policy would cover it, subject perhaps to some exclusions. Is that a fair statement? Correct, if it was a leasehold improvement. Right. And then how would I determine whether building electrical was a leasehold improvement? In other words, if I buy a building with an electrical system in it, I take it that's not a leasehold improvement, right? I believe if you were to buy a building with an electrical system so you turn on the lights in your building, that would be part of a leasehold improvement. In this case, the building itself is a leasehold improvement. Okay, the building itself is a leasehold improvement in your view? That's correct, because remember the car wash was not on the property when the original ground lease was entered into. So the entire car wash was built and therefore was an improvement on the leasehold. Is that a fair way to put it? Yes. Okay. I had the same question with respect to your friend was talking about damage to the roof. And when I read the company's letters, they do seem to be paying for some damage to the roof. So is there a dispute about how much you paid for that or is it a dispute about whether it was covered? The damage to the roof was covered and paid for. I don't believe that there was a dispute about the amount of the damage as alleged in our framework. It was the first time that it came up for me too and that's why I was trying to find out. Your letters seem to say here's a check and this includes damage to various things and one of them is the roofing. So was that ever raised below as an issue that you should have paid more for but didn't? No, Your Honor. And again, the complaint focuses on the improvements as it relates to the car wash equipment. And if you look at the complaint, 3 ER 546, you can start with paragraph 50. And it talks about the failure to pay that AMCO denied coverage for the fire claim. And then in denying further coverage for the claim, AMCO wrongfully claimed the car wash equipment was not owned by the plaintiffs. And that seems to be what the district court's summary judgment order focuses on. That's why I was trying to figure out what issues are actually in front of us and what issues are only being raised on appeal. Because the district court's order really focuses on who owns the leasehold improvements and the vandalism issue and doesn't seem to be separately directed towards some of these other items. Is that a fair reading of it? I think that's an absolutely fair reading, Your Honor. It starts with the complaint. It goes to our motion which challenged the issues that were raised by the complaint which focus on the car wash improvements. Even if you look at plaintiff's motion for summary judgment, they raised the same issue as it relates to moving for summary judgment as to the meaning of car wash improvements and leasehold improvements, etc. So this whole idea that we didn't pay enough on the claim for the part that we did pay on didn't come up until the reply brief on appeal. And again, our position would be that it's been waived for failure to raise it earlier. But can you go back to my question? My hearing you and your argument is that there's a disputed fact about whether or not the electrical improvements or the electrical is a part of the car wash system or is it a separate part of the leasehold improvement. So if leasehold improvements would be covered under the policy and if AMCO didn't pay, there's either a material dispute of fact or am I not understanding the relationship between the electrical improvements and the car wash system? Your Honor, I'm going to answer that question maybe a bit indirectly, but I'm trying to be direct. I'm not trying to work around the question. But in order to establish a material issue of fact, it has to be germane to the issues that are raised in the complaint. The complaint is what frames our motion for summary judgment. Because they didn't raise an issue about building electrical versus electrical and failure to pay on that. That's not an issue that's even present in the lawsuit at all. So let me stop there and see if that answers your question. Let me see if it answers Judge Mora's question because it prompts a question from me. So let me get this straight. You're saying had there been a claim delineated for building electrical, it might well have been covered by the policy, but the complaint and the claims didn't seem to seek coverage for anything but the electrical car wash system. Is that your position? That's correct. And as it relates to whether a claim was made to the insurance company, I'm talking more about whether or not it was raised in the lawsuit. The complaint didn't say you made a mistake by not paying for the building electrical. In your view, it said you made a mistake by not paying for the electrical systems for the car wash. Right. And Judge Mora's answer to your question. Point me to where the complaint says that. Can you help us out? Yes, absolutely. 3 ER 546. If you look at paragraphs 50 through 53, in addition to that. Okay, I'm there. Thank you. In addition to that, we have paragraphs in the section 548, paragraph 71. That's the allegation within the breach of contract claim, which is alleging that we improperly paid. And that deals for the car wash improvements. So I understand that. And so that's, and what you're really saying is that the cause of action is for the car wash improvements. It doesn't appear to be for anything else. Correct. Correct. And it wasn't, again, this is something that was raised in their motion for summary judgment, in opposition to our motion for summary judgment. It's just now being raised as a way to try to defeat the motion for summary judgment. But you can't defeat this motion for summary judgment with issues that aren't related to the allegations in the complaint and the issues that we raised. So, counsel, in your colloquy with Judge Hurwitz and your answers to my questions, if I understand, what you're saying is, yes, the electrical is a covered part of the claim. They didn't ask us to pay for it, so we didn't pay for it. And when they sued us, they didn't make that a part of their claim. So too bad that it's covered by the policy, but we don't have to pay and the case is over. I would say slightly differently in the sense that we made a payment for certain covered losses that we, you know, based on information that was submitted to the insurance company, we paid $15,000. They then filed a lawsuit saying, you didn't pay us for a portion of the loss, which specifically was the covered property, which is the car wash system. So you didn't pay us for that. That's over a million dollars' worth of equipment that's in there. We're going to sue you for that. So we rely on what the allegations are in the complaint. We do our discovery. We file a motion for summary judgment saying, there is no coverage for the car wash equipment. Had they raised the issue in the complaint and pursued this complaint differently, then there may be a different case. But we've been litigating this case for a long period of time based on the allegations in the complaint, and they aren't raising this issue now until an appeal. So this isn't an issue of, like, this is too bad you failed to raise it. This is an issue of fundamental fairness in litigating. We were entitled to know what the claims were presented against the insurance company, and that's framed by the allegations of the complaint. When do you believe that GEON first raised the claim for the building electrical? I don't know the answer to that question of when it was first raised. I know I've seen that reference in the denial letter, and I would also suggest that in terms of defeating a motion for summary judgment on electrical issues, it would be up to the plaintiff to present a claim as to what those damages were that they weren't actually paid for in that $15,000 payment, and I just don't believe that there's that sort of evidence here again because those weren't the issues that were framed or litigated in the case. Assume for a moment that you're correct in saying that the car wash improvements, if I call them that generally, are not covered by the policy. Is there any evidence in this record from which I can discern the extent of claim damage or the cost of repairing what would be covered electrical systems had somebody made a claim for them? I haven't seen a breakdown in the record that would... No, I've seen invoices that say repair electrical, and I assume at least some of that, if not all of it, relates to the electrical systems used to run the car wash, but I'm trying to figure out if in fact we can make the distinction that we've been talking about this morning, is there any evidence in this record from which I can tell how much damage was done to the so-called building electrical, and if so, whether or not that was covered by a check that you wrote? I would not be able to tell you if there's any specific breakdown that differentiates the electrical damage, building electrical damage, from car wash equipment. I haven't been able to find any, but it's a long record, and both sides are more familiar with it than I am. Just as I may raise a couple of quick points, one of the issues that Plaintiffs' Counsel talks about a lot in their briefs is that the court improperly weighed and balanced conflicting evidence. I'd like to point out that the test when you're analyzing contract interpretation is a two-step process. First, you look at the contract itself to determine whether or not it's ambiguous, which this court did. Then the second step is you look at possible alternative interpretations of that contract that are being urged by one party or the other, and you are allowed to look at extrinsic evidence. It's provisionally accepted. The point is that that issue of whether or not the contract is reasonably susceptible to another interpretation  So the plaintiff made a lot of noise about weighing and balancing and conflicting evidence, but the court absolutely is entitled to look at all the evidence and weigh and balance it and making that initial determination. If it determines that it is reasonably susceptible, which it didn't in this case, then you would go to admitting that evidence and talking about whether it's conflicting or not. And then the last point is on the estimates. The estimates that they talk about were all done prior to the plaintiffs telling us that they had sold the business. So any reliance on estimates and saying that we didn't pay them, etc., is really kind of a red herring because ultimately that claim was denied based on information that was later presented from the insurance about the sale of the business. I see I'm out of time. Does anyone have any further questions or anything that I can help answer? No. No. Thank you very much, counsel. Mr. Vetgear, I'll give you a minute to respond even though you're out of time. Thank you, Your Honors. I believe that the complaint is broader than what my opponent has portrayed it as. I believe that the allegations are that we reached the contract of failing to pay. Let's assume the complaint can be read more broadly, and this is, I think, a yes or no question. In your opposition or in your summary judgment papers, did you ever break out what we're now calling the building electrical and say, look, whatever you think about the car wash system, insurance company, you haven't paid for this or the payment you made doesn't cover this? I'm trying to find out where this issue was raised before. And so is it in your summary judgment papers in that form? I understand. I understand the invoices may have numbers that cover it, but is this argument made in sort of that form in your summary judgment papers? Your Honor, I say yes, and I would put my point to the material fact, 172. Which material fact? Number 172. Thank you. Thank you. All right. Gian versus Amco will be submitted, and this session of the court is adjourned for today. Thank you, counsel. Thank you, Your Honor.
judges: WARDLAW, HURWITZ, Molloy